FILED IN THE
U.S. DISTRICT COURT
EASTERN DISTRICT OF WASHINGTON

Mar 30, 2020

SEAN F. MCAVOY, CLERK

UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF WASHINGTON

| | |
|---|---|
| DENNIS G.,<br><br>                          Plaintiff,<br><br>       v.<br><br>COMMISSIONER OF SOCIAL SECURITY,<br><br>                          Defendant. | NO:  1:19-CV-03016-FVS<br><br>ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT AND DENYING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT |

   BEFORE THE COURT are the parties' cross motions for summary judgment.  ECF Nos. 10, 11.  This matter was submitted for consideration without oral argument.  The Plaintiff is represented by Attorney D. James Tree.  The Defendant is represented by Special Assistant United States Attorney Sarah L. Martin.  The Court has reviewed the administrative record and the parties' completed briefing and is fully informed.  For the reasons discussed below, the court **GRANTS** Defendant's Motion for Summary Judgment, ECF No. 11, and **DENIES** Plaintiff's Motion for Summary Judgment, ECF No. 10.

**JURISDICTION**

ORDER ~ 1

Plaintiff Dennis G.[1] protectively filed for supplemental security income on October 23, 2014, alleging an onset date of October 15, 2008. Tr. 346-51. At the hearing, the alleged onset date was amended to October 23, 2014. Tr. 119. Benefits were denied initially, Tr. 229-32, and upon reconsideration, Tr. 236-46. Plaintiff appeared for a hearing before an administrative law judge ("ALJ") on July 18, 2017. Tr. 116-49. Plaintiff was represented by counsel and testified at the hearing. *Id.* The ALJ denied benefits, Tr. 12-35, and the Appeals Council denied review. Tr. 1. The matter is now before this court pursuant to 42 U.S.C. § 1383(c)(3).

## BACKGROUND

The facts of the case are set forth in the administrative hearing and transcripts, the ALJ's decision, and the briefs of Plaintiff and the Commissioner. Only the most pertinent facts are summarized here.

Plaintiff was 42 years old at the time of the hearing. *See* Tr. 121. He did not graduate from high school, and testified that he got his GED. Tr. 122. Plaintiff lives alone. Tr. 121. He has work history as a bartender, waiter, and salesperson. Tr. 144. Plaintiff testified that he cannot work because he cannot climb ladders, he has to elevate his leg all the time because of swelling, and because of depression. Tr. 127-30.

---

[1] In the interest of protecting Plaintiff's privacy, the Court will use Plaintiff's first name and last initial, and, subsequently, Plaintiff's first name only, throughout this decision.

Plaintiff testified that he has to elevate his leg above his heart for at least 20 minutes out of every hour.  Tr. 129.  He reported that he has depression depending "on what's going on in [his] life," and he has night terrors.  Tr. 130-31.  Plaintiff also testified that he has side effects from his HIV medication, including dry mouth, diarrhea, and cramping; and he has to lie down and go to sleep three to four times a month due to groin pain.  Tr. 133-37.  Plaintiff testified that he can sit for no more than an hour or so before he has to stand up and stretch out, he can stand and walk for about an hour before he has to sit down, and he can lift no more than 20-25 pounds.  Tr. 140-41.

### STANDARD OF REVIEW

A district court's review of a final decision of the Commissioner of Social Security is governed by 42 U.S.C. § 405(g).  The scope of review under § 405(g) is limited; the Commissioner's decision will be disturbed "only if it is not supported by substantial evidence or is based on legal error."  *Hill v. Astrue*, 698 F.3d 1153, 1158 (9th Cir. 2012).  "Substantial evidence" means "relevant evidence that a reasonable mind might accept as adequate to support a conclusion."  *Id*. at 1159 (quotation and citation omitted).  Stated differently, substantial evidence equates to "more than a mere scintilla[,] but less than a preponderance."  *Id.* (quotation and citation omitted).  In determining whether the standard has been satisfied, a reviewing court must consider the entire record as a whole rather than searching for supporting evidence in isolation.  *Id.*

1    In reviewing a denial of benefits, a district court may not substitute its

2    judgment for that of the Commissioner.  If the evidence in the record "is

3    susceptible to more than one rational interpretation, [the court] must uphold the

4    ALJ's findings if they are supported by inferences reasonably drawn from the

5    record." *Molina v. Astrue,* 674 F.3d 1104, 1111 (9th Cir. 2012).  Further, a district

6    court "may not reverse an ALJ's decision on account of an error that is harmless."

7    *Id*.  An error is harmless "where it is inconsequential to the [ALJ's] ultimate

8    nondisability determination."  *Id*. at 1115 (quotation and citation omitted).  The

9    party appealing the ALJ's decision generally bears the burden of establishing that

10   it was harmed.  *Shinseki v. Sanders*, 556 U.S. 396, 409-10 (2009).

11                    **FIVE–STEP SEQUENTIAL EVALUATION PROCESS**

12           A claimant must satisfy two conditions to be considered "disabled" within

13   the meaning of the Social Security Act.  First, the claimant must be "unable to

14   engage in any substantial gainful activity by reason of any medically determinable

15   physical or mental impairment which can be expected to result in death or which

16   has lasted or can be expected to last for a continuous period of not less than twelve

17   months." 42 U.S.C. § 1382c(a)(3)(A).  Second, the claimant's impairment must be

18   "of such severity that he is not only unable to do his previous work[,] but cannot,

19   considering his age, education, and work experience, engage in any other kind of

20   substantial gainful work which exists in the national economy."  42 U.S.C. §

21   1382c(a)(3)(B).

The Commissioner has established a five-step sequential analysis to determine whether a claimant satisfies the above criteria. *See* 20 C.F.R. § 416.920(a)(4)(i)-(v). At step one, the Commissioner considers the claimant's work activity. 20 C.F.R. § 416.920(a)(4)(i). If the claimant is engaged in "substantial gainful activity," the Commissioner must find that the claimant is not disabled. 20 C.F.R. § 416.920(b).

If the claimant is not engaged in substantial gainful activity, the analysis proceeds to step two. At this step, the Commissioner considers the severity of the claimant's impairment. 20 C.F.R. § 416.920(a)(4)(ii). If the claimant suffers from "any impairment or combination of impairments which significantly limits [his or her] physical or mental ability to do basic work activities," the analysis proceeds to step three. 20 C.F.R. § 416.920(c). If the claimant's impairment does not satisfy this severity threshold, however, the Commissioner must find that the claimant is not disabled. 20 C.F.R. § 416.920(c).

At step three, the Commissioner compares the claimant's impairment to severe impairments recognized by the Commissioner to be so severe as to preclude a person from engaging in substantial gainful activity. 20 C.F.R. § 416.920(a)(4)(iii). If the impairment is as severe or more severe than one of the enumerated impairments, the Commissioner must find the claimant disabled and award benefits. 20 C.F.R. § 416.920(d).

If the severity of the claimant's impairment does not meet or exceed the severity of the enumerated impairments, the Commissioner must pause to assess

ORDER ~ 5

the claimant's "residual functional capacity." Residual functional capacity (RFC), defined generally as the claimant's ability to perform physical and mental work activities on a sustained basis despite his or her limitations, 20 C.F.R. § 416.945(a)(1), is relevant to both the fourth and fifth steps of the analysis.

At step four, the Commissioner considers whether, in view of the claimant's RFC, the claimant is capable of performing work that he or she has performed in the past (past relevant work). 20 C.F.R. § 416.920(a)(4)(iv). If the claimant is capable of performing past relevant work, the Commissioner must find that the claimant is not disabled. 20 C.F.R. § 416.920(f). If the claimant is incapable of performing such work, the analysis proceeds to step five.

At step five, the Commissioner considers whether, in view of the claimant's RFC, the claimant is capable of performing other work in the national economy. 20 C.F.R. § 416.920(a)(4)(v). In making this determination, the Commissioner must also consider vocational factors such as the claimant's age, education and past work experience. 20 C.F.R. § 416.920(a)(4)(v). If the claimant is capable of adjusting to other work, the Commissioner must find that the claimant is not disabled. 20 C.F.R. § 416.920(g)(1). If the claimant is not capable of adjusting to other work, analysis concludes with a finding that the claimant is disabled and is therefore entitled to benefits. 20 C.F.R. § 416.920(g)(1).

The claimant bears the burden of proof at steps one through four above. *Tackett v. Apfel*, 180 F.3d 1094, 1098 (9th Cir. 1999). If the analysis proceeds to step five, the burden shifts to the Commissioner to establish that (1) the claimant is

capable of performing other work; and (2) such work "exists in significant numbers in the national economy."  20 C.F.R. § 416.960(c)(2); *Beltran v. Astrue*, 700 F.3d 386, 389 (9th Cir. 2012).

## ALJ'S FINDINGS

At step one, the ALJ found that Plaintiff has not engaged in substantial gainful activity since October 23, 2014, the amended alleged onset date.  Tr. 17. At step two, the ALJ found that Plaintiff has the following severe impairments: lumbar degenerative disc disease and joint disease, recurrent hernias with status post repair, major depressive disorder, and posttraumatic stress disorder.  Tr. 17. At step three, the ALJ found that Plaintiff does not have an impairment or combination of impairments that meets or medically equals the severity of a listed impairment.  Tr. 19.  The ALJ then found that Plaintiff has the RFC

> to perform light work as defined in 20 CFR 416.967(b) except he can lift and/or carry 20 pounds occasionally and 10 pounds frequently; he can sit about 6 hours as well as stand and/or walk about 2 hours in an 8-hour workday with regular breaks; he has an unlimited ability to push/pull within these exertional limitations; he can occasionally climb ramps and stairs, but never climb ladders, ropes, and scaffolds; he can occasionally stoop, kneel, crouch, crawl, and balance; and he must avoid even moderate exposure to wetness and hazards.  He can understand, remember, and carry out simple as well as routine tasks.  He should work away from the general public.  He can have occasional superficial contact with coworkers and adjust to occasional and expected changes in the workplace.

Tr. 20-21.  At step four, the ALJ found that Plaintiff is unable to perform any past relevant work.  Tr. 27.  At step five, the ALJ found that considering Plaintiff's age, education, work experience, and RFC, there are jobs that exist in significant numbers in the national economy that Plaintiff can perform, including: assembler,

escort vehicle driver, and toy assembler/stuffer.  Tr. 27-28.  On that basis, the ALJ

concluded that Plaintiff has not been under a disability, as defined in the Social

Security Act, since October 23, 2014, the amended alleged onset date of disability.

Tr. 28.

## ISSUES

Plaintiff seeks judicial review of the Commissioner's final decision denying

her supplemental security income benefits under Title XVI of the Social Security

Act.  ECF No. 10.  Plaintiff raises the following issues for this Court's review:

1. Whether the ALJ erred at step two;

2. Whether the ALJ properly considered Plaintiff's symptom claims; and

3. Whether the ALJ properly weighed the medical opinion evidence.

## DISCUSSION

### A. Step Two

At step two, a claimant must first establish that he or she suffers from a

medically determinable impairment.  *See Ukolov v. Barnhart*, 420 F.3d 1002,

1004-1005 (9th Cir. 2005).  The claimant must prove the existence physical or

mental impairment by providing medical evidence consisting of signs, symptoms,

and laboratory findings; the claimant's own statement of symptoms alone will not

suffice. 20 C.F.R. §§ 404.1508, 416.908 (1991).  "Under no circumstances may the

existence of an impairment be established on the basis of symptoms alone."  S.S.R.

96-4p. Further, "regardless of how many symptoms an individual alleges, or how

genuine the individual's complaints may appear to be, the existence of a medically

determinable physical or mental impairment cannot be established in the absence of objective medical abnormalities, i.e., medical signs and laboratory findings." *Id.* Thus, objective evidence must be present to establish a medically determinable impairment.

To be considered 'severe' at step two of the sequential analysis, an impairment must significantly limit an individual's ability to perform basic work activities. 20 C.F.R. §§ 404.1520(c), 416.920(c); *also Smolen v. Chater,* 80 F.3d 1273, 1290 (9th Cir.1996). An impairment that is 'not severe' must be a slight abnormality (or a combination of slight abnormalities) that has no more than a minimal effect on the ability to do basic work activities. SSR 96-3p, 1996 WL 374181 at *1 (July 2, 1996). Plaintiff bears the burden to establish the existence of a severe impairment or combination of impairments, which prevent him from performing substantial gainful activity, and that the impairment or combination of impairments lasted for at least twelve continuous months. 20 C.F.R. §§ 404.1505, 404.1512(a); *Edlund v. Massanari*, 253 F.3d 1152, 1159-60 (9th Cir. 2011). However, step two is "a de minimus screening device [used] to dispose of groundless claims." *Smolen*, 80 F.3d at 1290. "Thus, applying our normal standard of review to the requirements of step two, we must determine whether the ALJ had substantial evidence to find that the medical evidence clearly established that [Plaintiff] did not have a medically severe impairment or combination of impairments." *Webb v. Barnhart*, 433 F.3d 683, 687 (9th Cir. 2005).

Here, the ALJ resolved step two in Plaintiff's favor, finding Plaintiff has the following severe impairments: lumbar degenerative disc disease and joint disease, recurrent hernias with status post repair, major depressive disorder, and posttraumatic stress disorder. Tr. 17. Despite this finding, Plaintiff argues the ALJ erred by failing to consider Plaintiff's HIV and lymphedema severe, and finding Plaintiff's carpal tunnel syndrome not medically determinable. ECF No. 10 at 3-8.

### 1. Carpal Tunnel Syndrome

Here, the ALJ found that while the record "mentions carpal tunnel syndrome," it does not qualify as a medically determinable impairment because there was no treatment for the condition, the diagnosis was only listed once and "was not repeated again subsequently, " and the record contains no objective evidence to establish the existence of such condition. Tr. 17. Plaintiff argues the ALJ erred because "a positive Tinel's and Phalen's test were found[, and an] EMG also showed mild left carpal tunnel." ECF No. 10 at 8 (citing Tr. 449, 1143). As an initial matter, the Court notes that the EMG test cited by Plaintiff was from November 2002, two years prior to the amended alleged onset date of October 23, 2014, and the test revealed "very mild carpal tunnel syndrome." Tr. 449. The Court may disregard statements of disability made outside the relevant time period. *See Turner v. Comm'r of Soc. Sec.*, 613 F.3d 1217, 1224 (9th Cir. 2010). Moreover, Plaintiff does not cite any evidence "consisting of signs, symptoms, and laboratory findings" to support a finding that carpal tunnel syndrome was a medically determinable impairment during the relevant adjudicatory period, aside

ORDER ~ 10

from a single treatment note finding positive Tinel and Phalen tests on the left upper extremity, with no accompanying diagnosis or mention of carpal tunnel syndrome. Tr. 1143.

Finally, Plaintiff fails to cite any specific limitation resulting from carpal tunnel, at any point in the longitudinal record, that was not included in the assessed RFC. *See Valentine v. Comm'r Soc. Sec. Admin.*, 574 F.3d 685, 692, n.2 (9th Cir. 2009); *Molina*, 674 F.3d at 1111 (an error is harmless "where it is inconsequential to the [ALJ's] ultimate nondisability determination"); *Kay v. Heckler*, 754 F.2d 1545, 1549 (9th Cir. 1985) (the "mere diagnosis of an impairment … is not sufficient to sustain a finding of disability."). For all of these reasons, the Court finds the ALJ did not err in failing to find carpal tunnel syndrome was a medically determinable impairment.

### 2. *Human Immunodeficiency Virus (HIV)*

Plaintiff was diagnosed with HIV in late 2016, and began antiretroviral treatment in March 2017. Tr. 17. Plaintiff testified that he experienced "significant side effects" from the HIV medication, including, diarrhea, cramping, weakness, erratic and restless sleep, and dry mouth. Tr. 133-34. However, as noted by the ALJ, Plaintiff "did not report such side effects to his providers, and in fact, he has not seen his specialty HIV provider, who prescribed his medication, again. Nothing in the record indicates that he has problems related to HIV that would impact his work capacity." Tr. 17-18. Plaintiff contends that he did report side effects to treatment providers, and attempts to cite evidence in support of this

argument, including (1) treatment notes indicating that HIV is "associated with abdominal pain, chills, and fatigue"; (2) Plaintiff "went to New Hope for treatment in the fall of 2016 and in March 2017," therefore the "pattern of treatment visits [] indicates he was being seen there every 3-4 months"; and (3) Plaintiff's self-report, at three treatment visits, that he had some combination of chills, dizziness, weakness, headaches, abdominal pain, constipation, and nausea. ECF No. 10 at 4 (citing Tr. 1296).

However, after reviewing the records cited by Plaintiff, the Court finds his argument is unavailing. First, while Plaintiff's treating provider did note that "HIV itself" was associated with certain symptoms, the same visit indicates that Plaintiff did not display any of those symptoms and his viral load was low. Tr. 1295-96. Second, Plaintiff cites no evidence in the record to contradict the ALJ's finding that he did not see his specialty HIV provider after March 2017; and the Court declines to infer a "pattern of treatment" that somehow indicates he was there "every 3-4 months." As noted by Defendant, Plaintiff "asserts that not all treatment notes from this clinic are in the record, but it was his burden to prove disability, and the lack of evidence in the record cannot establish this as a severe impairment." ECF No. 11 at 3 (citing 20 C.F.R. § 416.912(a) (claimant has the burden to produce medical evidence sufficient to show disability)). Third, and finally, while Plaintiff cites his reports of chills, dizziness, weakness, headaches, abdominal pain, constipation, and nausea in 2017, none of these records indicate that these symptoms were caused by or related to Plaintiff's claimed impairment of

HIV. *See* Tr. 1255, 1267, 1292. Based on the foregoing, the Court finds the ALJ

properly found that "[n]othing in the record indicates that he has problems related

to HIV that would impact his work capacity," and thus, HIV is a medically

determinable non-severe impairment. Tr. 18.

### 3. *Lymphadenopathy, Cellulitis, and Edema*

Here, the ALJ gives a detailed account of Plaintiff's treatment for

lymphadenopathy, cellulitis, and edema across the relevant adjudicatory period.

Tr. 18-19. Then, the ALJ summarizes the evidence and concludes as follows:

> [i]n sum, [Plaintiff] had mild right leg swelling in 2014, which was related to
> temporary right knee effusion. He then develop left leg swelling in 2015,
> which related to his lymph node biopsy in April 2015. This resolved within
> a few months following treatment. Then, there were no complaints of
> swelling, pain from swelling, or difficulties with functioning due to swelling
> for a long period (or supporting physical examination findings) until he had
> a second occurrence of cellulitis in his right leg about 3 months before the
> hearing, at which point he was still being treated for cellulitis. Nothing in
> the record indicated that this new occurrence of cellulitis would last longer
> than 12 months, and given the prior instance of cellulitis, it is reasonable to
> expect that this condition (and his need to elevate his leg) would not
> continue for at least 12 continuous months with treatment. Overlooking
> cellulitis, to the extent that he has swelling from another cause, the workup
> for lymphadenopathy was negative after several biopsies. He has never
> sought treatment at the lymphedema clinic as directed by his providers on 3
> separate occasions. Such lack of follow through is contrary to his
> complaints of constant swelling, pain, and need to elevate his leg while
> sitting. He has had no ongoing treatment for either edema or
> lymphadenopathy.

Tr. 19.

As an initial matter, the Court notes that Plaintiff failed to challenge several

of the ALJ's reasons for finding these impairments were not severe at step two,

including: (1) Plaintiff failed to seek treatment at the lymphedema clinic despite

being directed to do so on three separate occasions, and had no ongoing treatment for either edema or lymphadenopathy, and (2) Plaintiff's "allegations of progressive worsening, significant edema and pain, and functional problems are inconsistent with the medical record." Tr. 19. *See Carmickle v. Comm'r of Soc. Sec. Admin.*, 533 F.3d 1155, 1161 n.2 (9th Cir. 2008) (court may decline to address issues not identified with specificity in Plaintiff's opening brief). Moreover, Plaintiff's opening brief documents almost exactly the same history of lymphadenopathy, cellulitis, and edema as the ALJ's decision (Tr. 523, 531, 537, 620, 640, 703, 1129, 1179, 1227, 1218-19, 1226, 1235, 1238-40, 1341); and Plaintiff additionally cites treatment notes and imaging relating to enlarged lymph nodes, without any accompanying reference to pain or swelling of his lower extremities (Tr. 635, 646, 658, 1018, 1181, 1238-39, 1268, 1364). Based on largely the same evidence of the claimed impairments already considered by the ALJ, Plaintiff contends that the ALJ "harmfully erred by failing to consider the recurrent nature of the disorder and whether this chronic swelling would have 'more than minimal effect' on any basic work activity . . . sufficient to meet the *de minimus* standard." ECF No. 10 at 5-6. However, the ALJ extensively considered evidence of Plaintiff's claimed limitations from the relevant adjudicatory period, and thus the Court finds it was reasonable for the ALJ to conclude that "[b]ecause there is no 12-month period during which he has had continuous swelling in either his right or left leg (overlooking that his edema had more than one cause depending on the period), . . . his edema from cellulitis or from lymphadenopathy does not qualify as

a severe impairment.  They do not meet the durational requirement."  Tr. 19; 20

C.F.R. §§ 416.905 (the impairment or combination of impairments has lasted or

can be expected to last for at least twelve continuous months).  "[W]here evidence

is susceptible to more than one rational interpretation, it is the [Commissioner's]

conclusion that must be upheld."  *See Burch v. Barnhart*, 400 F.3d 676, 679 (9th

Cir. 2005).  Thus, the Court finds the ALJ did not err in finding Plaintiff's

lymphadenopathy, cellulitis, and edema were not severe at step two.

Finally, and most notably, the ALJ specifically noted that because the

medical opinions to which he gave great weight "incorporate the effects of edema

on his work capacity, acceptance of his edema as a severe impairment due to any

cause (i.e. cellulitis, lymphadenopathy, etc.) would not change his physical residual

functional capacity."  Tr. 25 n.1.  Therefore, even were the Court to find that the

ALJ improperly considered these claimed impairments at step two, any error

would be harmless because the ALJ specifically found any that any limitations

resulting from these claimed impairments were properly accounted for in the

assessed RFC.  *See Lewis v. Astrue,* 498 F.3d 909, 911 (9th Cir. 2007) (holding

that ALJ's failure to list plaintiff's bursitis as a severe impairment at step two was

harmless where ALJ considered limitations caused by the condition at step four);

*see also Molina*, 674 F.3d at 1115 (error is harmless "where it is inconsequential to

the [ALJ's] ultimate nondisability determination).

**B. Plaintiff's Symptom Claims**

An ALJ engages in a two-step analysis when evaluating a claimant's testimony regarding subjective pain or symptoms. "First, the ALJ must determine whether there is objective medical evidence of an underlying impairment which could reasonably be expected to produce the pain or other symptoms alleged." *Molina*, 674 F.3d at 1112 (internal quotation marks omitted). "The claimant is not required to show that her impairment could reasonably be expected to cause the severity of the symptom he has alleged; he need only show that it could reasonably have caused some degree of the symptom." *Vasquez v. Astrue*, 572 F.3d 586, 591 (9th Cir. 2009) (internal quotation marks omitted).

Second, "[i]f the claimant meets the first test and there is no evidence of malingering, the ALJ can only reject the claimant's testimony about the severity of the symptoms if [the ALJ] gives 'specific, clear and convincing reasons' for the rejection." *Ghanim v. Colvin*, 763 F.3d 1154, 1163 (9th Cir. 2014) (internal citations and quotations omitted). "General findings are insufficient; rather, the ALJ must identify what testimony is not credible and what evidence undermines the claimant's complaints." *Id*. (quoting *Lester*, 81 F.3d at 834); *Thomas v. Barnhart*, 278 F.3d 947, 958 (9th Cir. 2002) ("[T]he ALJ must make a credibility determination with findings sufficiently specific to permit the court to conclude that the ALJ did not arbitrarily discredit claimant's testimony."). "The clear and convincing [evidence] standard is the most demanding required in Social Security cases." *Garrison v. Colvin*, 759 F.3d 995, 1015 (9th Cir. 2014) (quoting *Moore v. Comm'r of Soc. Sec. Admin.*, 278 F.3d 920, 924 (9th Cir. 2002)).

Here, the ALJ found Plaintiff's medically determinable impairments could reasonably be expected to cause some of the alleged symptoms; however, Plaintiff's "statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely consistent with the medical evidence and other evidence in the record" for several reasons. Tr. 21.

### 1. Lack of Objective Medical Evidence

First, the ALJ found that Plaintiff's claimed back pain and edema, as well as his claimed mental health limitations, were not consistent with the medical evidence. Tr. 22-23. An ALJ may not discredit a claimant's pain testimony and deny benefits solely because the degree of pain alleged is not supported by objective medical evidence. *Rollins v. Massanari*, 261 F.3d 853, 857 (9th Cir. 2001); *Bunnell v. Sullivan*, 947 F.2d 341, 346-47 (9th Cir. 1991); *Fair v. Bowen*, 885 F.2d 597, 601 (9th Cir. 1989). However, the medical evidence is a relevant factor in determining the severity of a claimant's pain and its disabling effects. *Rollins*, 261 F.3d at 857; 20 C.F.R. § 404.1529(c)(2).

Here, the ALJ set out the medical evidence contradicting Plaintiff's claims of disabling limitations. As to his claimed physical impairments, the ALJ found (1) that Plaintiff's complaints about edema were determined not to be severe, in large part because they were not consistent with the medical record, and (2) Plaintiff's allegations of back pain are not consistent with the record. Tr. 18-19, 22. First, Plaintiff argues the ALJ improperly found his edema was not severe; however, as discussed in detail above, the ALJ did not err in finding Plaintiff's

ORDER ~ 17

claimed impairments related to edema were not severe at step two. Second, as to

his claims of back pain and herniated discs, Plaintiff contends "several providers

assessed disabling spinal limitations," and the ALJ "made no mention of objective

findings showing moderately severe DDD by 2016." ECF No. 10 at 18. However,

the ALJ noted that x-ray findings in May 2015 showed degenerative changes at

L5-S1 with only mild anteriolisthesis and no herniated disc seen, no nerve testing

was conducted to establish radiculopathy, the "record [has] not focused much on

his back pain generally given the focus on his intermittent instances of edema and

urological issues." Tr. 22, 616, 1119-1419; *see Burch*, 400 F.3d at 680 (minimal

objective evidence is a factor which may be relied upon in discrediting a claimant's

testimony, although it may not be the only factor).

As to his claimed mental health limitations, the ALJ found Plaintiff's

"allegations of disabling depression and anxiety are inconsistent with the record."

Tr. 23. Plaintiff does not identify or challenge this reason in his opening brief;

thus, the Court may decline to address the issue. *See Carmickle*, 533 F.3d at 1161

n.2. Regardless, in support of this finding, the ALJ noted that Plaintiff reported in

February 2015 that his depression did not cause significant distress or impairment

in functioning; treatment notes indicated Plaintiff's depression and PTSD were

well managed with medication; his main complaint during "brief" mental health

treatment in 2015 was nightmares, interpersonal conflict, and new housing as

opposed to the "depression or anxiety in crowds to which he testified"; and mental

health examinations and observation findings were largely normal. Tr. 22-23 (citing Tr. 627-29, 866, 869-71, 1006-10).

Based on the foregoing, and regardless of evidence that could be considered more favorable to Plaintiff, it was reasonable for the ALJ to find the severity of Plaintiff's symptom claims was inconsistent with medical evidence. *See Burch*, 400 F.3d at 679 (ALJ's conclusion must be upheld where evidence is susceptible to more than one rational interpretation). This lack of corroboration of Plaintiff's claimed limitations by the medical evidence was a clear and convincing reason, supported by substantial evidence, for the ALJ to discount Plaintiff's symptom claims.

### 2. *Failure to Seek and Comply with Treatment*

Second, the ALJ found the record "contains very little mental health treatment during the relevant period, as most of it occurred [prior to the relevant time period] in 2012 and earlier," and Plaintiff "has not follow[ed] through with treatment twice, once in 2014 and another in 2015. . . . A lack of treatment follow through, especially in his case where he does not just stay home daily and prefers to leave his home, is indicative of a lack of severe mental challenges." Tr. 22-23. Unexplained, or inadequately explained, failure to seek treatment or follow a prescribed course of treatment may be the basis for an adverse credibility finding unless there is a showing of a good reason for the failure. *Orn v. Astrue*, 495 F.3d 625, 638 (9th Cir. 2007). In support of this finding, the ALJ cites evidence that Plaintiff went to one treatment session in 2014 and was then involuntarily

discharged from mental health treatment due to excessive no-shows and cancellations; and then in 2015 Plaintiff reported his depression "did not cause significant distress or impairment in functioning," he did not struggle significantly when getting upset, and his past trauma did not affect his quality of life. Tr. 22, 564, 872, 1006-10. The ALJ also noted that while Plaintiff "underwent brief mental health treatment" in 2015, his "main complaints" were nightmares, physical complaints, and interpersonal complaints, and Plaintiff "again stopped going to treatment and was discharged shortly thereafter." Tr. 22-23, 859, 866, 869-71.

Plaintiff argues the ALJ failed to consider that (1) Plaintiff discussed an agreed upon break in treatment with this therapist, (2) "there is evidence [that Plaintiff] lost his insurance benefits to get medication," and (3) "on several occasions [Plaintiff] indicated functioning was 'very' to 'extremely' difficult." ECF No. 10 at 18 (citing Tr. 869, 971, 992, 1308, 1342). An ALJ "will not find an individual's symptoms inconsistent with the evidence in the record on this basis without considering possible reasons he or she may not comply with treatment or seek treatment consistent with the degree of his or her complaints." Social Security Ruling ("SSR") 16-3p at *8-*9 (March 16, 2016), *available at* 2016 WL 1119029. However, the Court's review of the records cited by Plaintiff indicate that while Plaintiff discussed the possibility of a "break in treatment for CPT" at an appointment in May 2015, at the next appointment Plaintiff decided to postpone CPT treatment and instead "begin treatment focus for his depression." Tr. 868-69. Subsequently, Plaintiff attended a few more treatment visits, and was discharged

ORDER ~ 20

from treatment in September 2015 "due to Failed to Return." Tr. 859. Moreover, the same treatment note cited by Plaintiff indicating that he "lost his benefits for" medication, also states he "can now get them back." Tr. 971. And finally, regardless of evidence in the record that could be considered favorable to Plaintiff, it was reasonable for the ALJ to conclude that Plaintiff's failure to seek and comply with treatment was inconsistent with the alleged severity of his complaints. *See Burch*, 400 F.3d at 679 (where evidence is susceptible to more than one interpretation, the ALJ's conclusion must be upheld). This was a clear and convincing reason for the ALJ to discredit Plaintiff's symptom claims.

### 3. Daily Activities

Third, the ALJ noted that Plaintiff "was able to do a wide range of activities in spite of his impairments, including the ability to care for himself, be in public environments, leave his home, move residences, schedule appointments," and live independently. Tr. 23, 618. As noted by Plaintiff, a claimant need not be utterly incapacitated in order to be eligible for benefits. ECF No. 10 at 19 (citing *Fair*, 885 F.2d at 603); *see also Orn*, 495 F.3d at 639 ("the mere fact that a plaintiff has carried on certain activities . . . does not in any way detract from her credibility as to her overall disability."). Regardless, even where daily activities "suggest some difficulty functioning, they may be grounds for discrediting the [Plaintiff's] testimony to the extent that they contradict claims of a totally debilitating impairment." *Molina*, 674 F.3d at 1113.

In further support of this finding, the ALJ cites Plaintiff's self-report that he walked as his primary mode of transportation, was not physically limited in doing laundry, tried his "darndest" to get out of the house daily, worked on computers as a hobby, completed daily hygiene tasks, prepared his own meals, scheduled his own appointments, went shopping, and did all chores independently. Tr. 22, 624-25, 1006-08. Plaintiff briefly argues that his ability to perform "some basic self-care, [that he] sometimes had a hobby, and [that he] had to work hard just to leave the house is not inconsistent with testimony of mental health limitations." ECF No. 10 at 19. However, regardless of evidence that could be viewed more favorably to Plaintiff, it was reasonable for the ALJ to conclude that Plaintiff's documented daily activities, including caring for all of his personal and household needs entirely independently, was inconsistent with his allegations of incapacitating limitations. Tr. 28; *Molina*, 674 F.3d at 1113 (Plaintiff's activities may be grounds for discrediting Plaintiff's testimony to the extent that they contradict claims of a totally debilitating impairment); *See Burch*, 400 F.3d at 679 (where evidence is susceptible to more than one interpretation, the ALJ's conclusion must be upheld). This was a clear and convincing reason to discredit Plaintiff's symptom claims

### 4. Inconsistencies and Reasons for Stopping Work

Finally, the ALJ cited "inconsistencies [that] add to [the] finding regarding the lack of veracity of [Plaintiff's] allegations about the severity of his impairments." Tr. 23. In evaluating the severity of Plaintiff's symptoms, the ALJ

ORDER ~ 22

may consider inconsistencies in Plaintiff's statements, and between her testimony and her conduct. *See Thomas*, 278 F.3d at 958-59; *Tommasetti*, 533 F.3d at 1039 (prior inconsistent statements may be considered). First, the ALJ found it "notable that [Plaintiff's] description of his activities differ substantially between his functional reports and reports to examiners, such as statements about his past time activities, self-care, and household chores." Tr. 23. Plaintiff argues "[w]hat differences the ALJ had in mind are unstated and thus known." ECF No. 10 at 19. However, the ALJ specifically cites to Plaintiff's function reports indicating that he cannot cook, walk more than a block or two, keep a schedule, or manage money, which are are inconsistent with his reports to examiners that he likes to walk, works on computers as a hobby, completes daily tasks, prepares his own meals, schedules his own appointments, goes shopping, and does all chores independently. Tr. 22-23, 413-18, 624-25, 1006-08. Second, the ALJ cites evidence that Plaintiff "did not stop working in his last job for missing work; rather, he evidently was working part-time for a month but stopped because he only received 10 hours per week during the worst shift." Tr. 23, 626. An ALJ may consider that a claimant stopped working for reasons unrelated to the allegedly disabling condition when weighing the Plaintiff's symptom reports. *Bruton v. Massanari*, 268 F.3d 824, 828 (9th Cir. 2001). It was reasonable for the ALJ to discount Plaintiff's symptom claims based on these inconsistencies.

Finally, the ALJ found that "[o]ne evaluator noted possible exaggeration, noting severe mental health issues that would warrant hospitalization (but with no

ORDER ~ 23

evidence or report of hospitalization) and exaggeration of his diagnosis/history as a way to present himself in the worst possible scenario." Tr. 23 (citing Tr. 626-27). The tendency to exaggerate is a permissible reason for discounting Plaintiff's symptom claims. *See Tonapetyan v. Halter*, 242 F.3d 1144, 1148 (9th Cir. 2001). However, Plaintiff correctly noted that the full context of the examining provider's statement also included findings that Plaintiff was candid and cooperative, and "he does not seem to exaggerate his symptoms and it appears reasonably clear that his description of his PTSD and his depression are both significant." ECF No. 10 at 20 (citing Tr. 627). Thus, to the extent the ALJ relied on exaggeration of symptoms in order to discount Plaintiff's symptom claims, the Court finds this was not a clear and convincing reason. However, this error is harmless because, as discussed above, the ALJ's ultimate rejection of Plaintiff's symptom claims was supported by substantial evidence. *See Carmickle*, 533 F.3d at 1162-63.

The Court concludes that the ALJ provided clear and convincing reasons, supported by substantial evidence, for rejecting Plaintiff's symptom claims.

**C. Medical Opinions**

There are three types of physicians: "(1) those who treat the claimant (treating physicians); (2) those who examine but do not treat the claimant (examining physicians); and (3) those who neither examine nor treat the claimant [but who review the claimant's file] (nonexamining [or reviewing] physicians)." *Holohan v. Massanari,* 246 F.3d 1195, 1201–02 (9th Cir. 2001) (citations omitted). Generally, a treating physician's opinion carries more weight than an examining

ORDER ~ 24

physician's, and an examining physician's opinion carries more weight than a reviewing physician's. *Id.* If a treating or examining physician's opinion is uncontradicted, the ALJ may reject it only by offering "clear and convincing reasons that are supported by substantial evidence." *Bayliss v. Barnhart,* 427 F.3d 1211, 1216 (9th Cir.2005). Conversely, "[i]f a treating or examining doctor's opinion is contradicted by another doctor's opinion, an ALJ may only reject it by providing specific and legitimate reasons that are supported by substantial evidence." *Id.* (citing *Lester v. Chater*, 81 F.3d 821, 830-31 (9th Cir. 1995)). "However, the ALJ need not accept the opinion of any physician, including a treating physician, if that opinion is brief, conclusory and inadequately supported by clinical findings." *Bray v. Comm'r of Soc. Sec. Admin.,* 554 F.3d 1219, 1228 (9th Cir. 2009) (quotation and citation omitted).

The opinion of an acceptable medical source such as a physician or psychologist is generally given more weight than that of an "other source." *See* SSR 06-03p (Aug. 9, 2006), *available at* 2006 WL 2329939 at *2; 20 C.F.R. § 416.927(a). "Other sources" include nurse practitioners, physician assistants, therapists, teachers, social workers, and other non-medical sources. 20 C.F.R. §§ 404.1513(d), 416.913(d). The ALJ need only provide "germane reasons" for disregarding an "other source" opinion. *Molina*, 674 F.3d at 1111. However, the ALJ is required to "consider observations by nonmedical sources as to how an impairment affects a claimant's ability to work." *Sprague v. Bowen,* 812 F.2d 1226, 1232 (9th Cir. 1987).

ORDER ~ 25

Plaintiff argues the ALJ erroneously considered the opinions of treating physician, Jeremiah Crank, M.D.[2], examining physician William Drenguis, M.D., examining psychologist Rebekah A. Cline, Psy.D., examining physician Gregory Sawyer, M.D., Ph.D., and treating provider Maryalice Hardison, ARNP. ECF No. 10 at 7-11.

### 1. William Drenguis, M.D.

In May 2015, Dr. Drenguis examined Plaintiff and found he could stand and walk for at least two hours in an eight hour workday with normal breaks, sit less than six hours in an eight hour work day with normal breaks, lift and carry twenty pounds occasionally and ten pounds frequently, frequently reach overhead and forward, and frequently handle, finger and feel. Tr. 617-622. The ALJ gave Dr. Drenguis' opinion partial weight, and "[did] not accept" the assessed limitation

_____

[2] In February 2014, Dr. Crank opined that Plaintiff would have marked limitations in sitting, standing, walking, lifting, carrying, handling, pushing, pulling, reaching, stooping, and crouching. Tr. 455. Plaintiff contends the ALJ erred by failing to address Dr. Crank's opinion. ECF No. 10 at 9. However, as noted by Defendant, "[m]edical opinions that predate the alleged onset date of disability are of limited relevance." ECF No. 11 at 8 (citing *Carmickle*, 533 F.3d at 1165). Thus, the Court finds no error in the ALJ's lack of consideration of Dr. Crank's February 2014 opinion, because it predated Plaintiff's alleged onset date of October 23, 2014.

that Plaintiff could only sit for less than six hours, and the assessed manipulative limitations, for several reasons.  Tr. 25.

First, the ALJ noted Dr. Drenguis' own "findings and observations are not indicative of someone who could sit for less than 6 hours or has any manipulative limitations." Tr. 25.  The ALJ may properly reject a medical opinion if it is inconsistent with the provider's own treatment notes. *Tommasetti*, 533 F.3d at 1041.  In support of this finding, the ALJ noted that Dr. Drenguis "personally observed" Plaintiff walk from the parking lot, rise from a chair, and get on and off the examination table without difficulty, have good range of motion, was able to use his hands to manipulate things, perform a full squat while keeping his back straight, and perform heel/toe and tandem walking.  Tr. 25, 619-20.  Moreover, as noted by the ALJ, strength and sensory examination findings were normal, including: negative straight leg raising bilaterally, 5/5 muscle strength bilaterally symmetrical in all muscle groups of the upper and lower extremities, 5/5 grip strength and bilaterally symmetrical, normal muscle bulk and tone, intact light touch and pinprick, negative Tinel's and Phalen's tests, deep tendon reflexes are 2+ in all extremities, and cranial nerves are grossly intact.  Tr. 25, 621.

Plaintiff argues the ALJ "left out" Dr. Drenguis' finding that Plaintiff had somewhat limited range of motion in his back only, pitting edema in his left leg "consistent with left groin lymphocele after lymph node surgery resulting in left leg lymphedema," his gait favored his left leg, and his back was tender and had muscle spasms.  ECF No. 10 at 11 (citing Tr. 619-20).  However, the Court notes

ORDER ~ 27

that Dr. Drenguis specified that Plaintiff's left leg swelling is "only four weeks old" and "[i]t is not clear what the long term prognosis will be"; and while Dr. Drenguis included Plaintiff's "self-diagnosis" of carpal tunnel as part of his evaluation, he specifically found no evidence of carpal tunnel on examination   Tr. 617-18, 621.  Thus, regardless of evidence that might be considered more favorable to Plaintiff, it was reasonable for the ALJ to find that the overall objective examinations and clinical findings in Dr. Drengius' own treatment notes were inconsistent with the severity of the sitting and manipulative limitations he assessed.  *See Burch*, 400 F.3d at 679 (where evidence is susceptible to more than one interpretation, the ALJ's conclusion must be upheld).

Second, the ALJ found that Plaintiff has never undergone any significant treatment for his back, and there is no evidence of any upper extremity impairment that would correlate with any manipulative limitations.[3]  Tr. 25.  The consistency

---

[3] The ALJ also noted that Plaintiff did not testify as to any problems in his back "other than his avoidance of lifting more than 20-25 pounds" based on an unidentified provider's recommendation.  Tr. 25.  However, as noted by Plaintiff, he also testified that he could only sit for "half and hour to an hour" before he needs to stand up.  ECF No. 10 at 11 (citing Tr. 140-41).  However, any error in considering this evidence is harmless because, as discussed herein, the ALJ's ultimate rejection of Plaintiff's symptom claims was supported by substantial evidence.  *See Carmickle*, 533 F.3d at 1162-63.

of a medical opinion with the record as a whole is a relevant factor in evaluating that medical opinion. *Orn*, 495 F.3d at 631. Plaintiff argues the ALJ failed to find Plaintiff's carpal tunnel syndrome was a medically determinable impairment, and failed to consider evidence of "why treatment was not pursued" for his back pain. ECF No. 10 at 11-12. However, in support of this argument, Plaintiff cites a single self-report of back pain and a physical therapy treatment record, both from outside the relevant adjudicatory period; and he cites evidence of surgeries unrelated to Plaintiff's alleged back pain. ECF No. 10 at 12. Moreover, as discussed in detail above, the record does not indicate ongoing treatment for back pain, and x-ray findings in May 2015 showed degenerative changes at L5-S1 with only mild anteriolisthesis and no herniated disc. Tr. 22, 25, 616. Finally, as discussed above, the ALJ properly found Plaintiff's claimed carpal tunnel syndrome was not a medically determinable impairment at step two. *See* Social Security Ruling (SSR) 96-8p, 1996 WL 374184, at *2 (an ALJ is only required to include in the RFC limitations and restrictions that are "attributable to medically determinable impairments"). Thus, it was reasonable for the ALJ to discount Dr. Drenguis' opinion as to Plaintiff's manipulative and sitting limitations because they are inconsistent with the longitudinal medical evidence.

For all of these reasons, the Court finds the ALJ did not err in considering Dr. Drenguis' opinion regarding Plaintiff's sitting and manipulative limitations.

### 2. *Rebekah A. Cline, Psy.D.*

In October 2015, Dr. Cline examined Plaintiff and opined that he had marked limitations in his ability to communicate and perform effectively in a work setting, maintain appropriate behavior in a work setting, and complete a normal work day and work week without interruptions from psychologically based symptoms.  Tr. 1025-29.  The ALJ gave little weight to Dr. Cline's opinion because "[h]er ratings are not consistent with the overall medical record."  Tr. 26.  The consistency of a medical opinion with the record as a whole is a relevant factor in evaluating that medical opinion.  *Orn*, 495 F.3d at 631; *see also Batson v. Comm'r of Soc. Sec. Admin.*, 359 F.3d 1190, 1195 (9th Cir. 2004) (an ALJ may discount an opinion that is conclusory, brief, and unsupported by the record as a whole, or by objective medical findings).  In support of this finding, the ALJ noted that (1) Plaintiff has not sought much medical treatment during the relevant period at issue, (2) treatment notes, "particularly in 2015, contained little evidence of any ongoing mental problems beyond external factors like interpersonal disputes with others, housing issues, etc.," and (3) Plaintiff "himself indicated that he was not mentally incapacitated due to depression or nightmares."  Tr. 26.

First, as above, Plaintiff argues the ALJ "harmfully failed to consider" reasons why Plaintiff did not pursue mental health treatment, and cites a single treatment note indicating that Plaintiff discussed a possible break in treatment "for CPT" until he was "sure about his medical and he is being care for appropriately."  Tr. 869.  However, as noted by Defendant, this mischaracterizes the overall record, which includes a treatment note immediately following the record cited by Plaintiff

ORDER ~ 30

at which Plaintiff and his treating provider "agreed to postpone CPT treatment, but 'decided to begin treatment focus[ed] on his depression.'" ECF No. 11 at 868. Subsequently, Plaintiff attended a few more treatment visits, and was discharged from treatment in September 2015 "due to Failed to Return." Tr. 859. "This does not support an inference that [Plaintiff's] medical problems prevented him from attending therapy." ECF No. 11 at 10.

Second, Plaintiff cites treatment notes indicating that he was found to be anxious and depressed, had impaired short and remote memory, his attention was poor, his concentration was disjointed, and his insight and judgement were impaired. ECF No. 10 at 13-14 (citing Tr. 972, 976, 992, 1001, 1342, 1351). However, the evidence cited by Plaintiff is at least partially comprised of her own subjective complaints, which were properly discounted by the ALJ; whereas the overall record includes minimal treatment records for mental health, and largely normal mental status examinations. Tr. 22-23, 627-29, 866, 869-71, 1006-10; *see* 20 C.F.R. § 416.929(a) (claimant's subjective statements about symptoms will not alone establish Plaintiff is disabled). Moreover, regardless of evidence that could be considered favorable to Plaintiff, it was reasonable for the ALJ to note that Plaintiff's own reports to examining providers that he was not mentally incapacitated, and the lack of evidence of ongoing mental health problems, were inconsistent with the severity of the limitations assessed by Dr. Cline. The lack of consistency between Dr. Cline's opinion and the overall record was a specific and

legitimate reason, supported by substantial evidence, for the ALJ to reject Dr. Cline's opinion.

### 3. *Gregory Sawyer, M.D., Ph.D.*

In June 2015, Dr. Sawyer examined Plaintiff and found he "will have difficulty" attempting to maintain effective social interactions on a consistent and independent basis with supervisors, coworkers and the public; attempting to sustain concentration and persist in work-related activity at a reasonable pace; attempting to maintain regular attendance in the workplace; attempting to complete a normal workday or workweek without interruptions; and attempting to deal with the usual stresses encountered in the workplace. Tr. 623-31. The ALJ gave partial weight to Dr. Sawyer's opinion because "[w]hile Dr. Sawyer listed areas in which [Plaintiff] would have difficulty, Dr. Sawyer did not describe or otherwise identify the degree of difficulty. Simply stating that one has difficulty is insufficient, especially when considering a work environment that involves significantly less mental and social demands." Tr. 25.

Plaintiff generally contends, without citation to binding legal authority, that the ALJ should "strictly construe" workplace demands such as the ability to maintain attendance and complete a normal workday and work week; and in the alternative, Plaintiff argues that "if the ALJ found Dr. Sawyer's opinion ambiguous such that it was not interpretable, the ALJ had a 'special duty to fully an fairly develop the record.'" ECF No. 10 at 16. As an initial matter, "[a]n ALJ's duty to develop the record is triggered only when there is ambiguous evidence or when the

ORDER ~ 32

record is inadequate to allow for proper evaluation of the evidence." *Mayes v. Massanari*, 276 F.3d 453, 459-60 (9th Cir. 2001). Moreover, while the ALJ may have a duty to develop the record in certain cases, it is Plaintiff's burden to produce evidence to establish disability. 20 C.F.R. § 404.1512(a). Here, the Court is unable to discern any inadequacy or ambiguity that did not allow for proper evaluation of the record as a whole. *See Bayliss*, 427 F.3d at 1217.

Moreover, the ALJ is not required to incorporate limitations phrased equivocally into the assessed RFC. *Valentine v. Comm'r Soc. Sec. Admin.*, 574 F.3d 685, 691-92 (9th Cir. 2009); *see also Turner v. Comm'r of Soc. Sec. Admin.*, 613 F.3d 1217, 1223 (9th Cir. 2010) (where a physician's report did not assign any specific limitations or opinions in relation to an ability to work, "the ALJ did not need to provide 'clear and convincing reasons' for rejecting [the] report because the ALJ did not reject any of [the report's] conclusions."). Thus, it was reasonable for the ALJ to reject Dr. Sawyer's vague assessments that Plaintiff would have "difficulty" in certain work activities, because he did not "describe or otherwise identify the degree of difficulty." Tr. 25. For all of these reasons, the Court finds no error in the ALJ's consideration of Dr. Sawyer's opinion.

### 4. Maryalice Hardison, ARNP

In June 2017, Plaintiff's treating provider Ms. Hardison opined that Plaintiff would have to lie down for at least 15 minutes during the day "but generally 1-2 hours due to back pain and swelling of extremities," and he would miss on average of 4 or more days per month of work if he attempted to work a forty hour per week

ORDER ~ 33

schedule. Tr. 1106-07. The ALJ gave her opinion little weight for several reasons. Tr. 26. First, the ALJ noted that Ms. Hardison "failed to provide a detailed explanation for her assessment." Tr. 26. Second, the ALJ noted there was "no objective evidence of radiculopathy or even a substantially limiting back impairment," Plaintiff did not report significant side effects from medication to his providers, Plaintiff reported no fatigue and improved mood in 2016, Plaintiff had improvement in his symptoms with medication, and Plaintiff recovered from surgeries within twelve months. Tr. 26 (citing Tr. 1006, 1294, 1318, 1329-30). Based on this evidence, the ALJ found the "record does not support the notion that [Plaintiff] needs to lie down during the day, has actual side effects from medication, or is expected to miss work 4 or more days of work each month." Tr. 26.

An ALJ may discount an opinion that is conclusory, brief, and unsupported by the record as a whole, or by objective medical findings. *Batson v. Comm'r of Soc. Sec. Admin.*, 359 F.3d 1190, 1195 (9th Cir. 2004). Plaintiff generally argues this finding is inconsistent with Dr. Crank and Dr. Drenguis' opinions. ECF No. 10 at 16. However, as discussed in detail above, the ALJ's rejection of these opinions was free of legal error and supported by substantial evidence. In addition, Plaintiff cites evidence from the relevant period, including x-rays in 2016 that found moderately severe degenerative disc disease, positive straight leg tests, and Plaintiff's self-reports that his medications were not helping his back pain. ECF No. 10 at 16-17 (citing Tr. 539, 1142, 1297, 1305, 1317, 1340, 1363). However,

ORDER ~ 34

regardless of some evidence that could be favorable to Plaintiff, it was reasonable for the ALJ to find the overall record, including objective findings, did not support the severe limitations opined by Ms. Hardison. *See Burch*, 400 F.3d at 679. These were germane reasons for the ALJ to discount Ms. Hardison's opinion.

## CONCLUSION

A reviewing court should not substitute its assessment of the evidence for the ALJ's. *Tackett*, 180 F.3d at 1098. To the contrary, a reviewing court must defer to an ALJ's assessment as long as it is supported by substantial evidence. 42 U.S.C. § 405(g). As discussed in detail above, the ALJ did not err at step two, provided clear and convincing reasons to discount Plaintiff's symptom claims, and properly weighed the medical opinion evidence. After review the Court finds the ALJ's decision is supported by substantial evidence and free of harmful legal error.

**ACCORDINGLY, IT IS HEREBY ORDERED:**

1. Plaintiff's Motion for Summary Judgment, ECF No. 10, is **DENIED**.

2. Defendant's Motion for Summary Judgment, ECF No. 11, is **GRANTED**.

The District Court Clerk is directed to enter this Order and provide copies to counsel. Judgement shall be entered for Defendant and the file shall be **CLOSED**.

**DATED** March 30, 2020.

*s/Fred Van Sickle*

Fred Van Sickle
Senior United States District Judge